23.6265 U.S. v. Jamal Franklin. May it please the court, James Egan for Jamal Franklin. Any suspicion of criminality in this case came exclusively from an alleged third party. The district court erred in finding that that information furnished reasonable suspicion for several reasons. As an initial matter, the court could not find that the alleged third party was reliable because nothing in the record ensured against fabrication, i.e. that the third party actually existed and gave the information that was reported in the Amtrak records. I realize you're sort of at a disadvantage here in terms of visibility to the record, but I gather that one of the things you're asking us to do is review the in-camera information with an eye to those arguments that may or may not apply in the context of the full scope of information. Correct, Your Honor. And we've noted that the two issues are reliability and basis of knowledge. And I would implore the court to consider whether the record ensures against fabrication, which is one of the reasons why disclosure is necessary. Court cases from the court dating back to the 60s and 70s have made sure that when there isn't disclosure, there are other measures to protect against fabrication. Those can be either that the reporting officer gave a sworn statement or sworn testimony, thus making it unlikely that that person would perjure themselves by proffering fabricated material. There could be other evidence independent of, in general, in other cases where maybe not going entirely to reasonable suspicion or probable cause, but getting it pretty close. And then another measure that's been authorized by this court is when a district court questions the third party in camera, either independently or with some written questions in advance by defense counsel. That's Fields and Tucker is the case that sort of gets into a lot of these issues. So having said that, I would move to then what is sort of visible to us in the defense version that is redacted. We've argued is both stale and not sufficiently predictive to allow the officers to conduct the stop on July 5th. At most, there were general claims of criminality of past criminality of an unspecified date and unspecified frequency. There's nothing that we see in the reports that claim how the person said to have known any of this. And certainly not like white where there is Supreme Court's decision where there were sufficiently predictive information that would allow officers to surveil, follow and check off all of the things that were predicted to happen in the future. And that did happen. And then that supported the anonymous claim. This case is actually different than an anonymous tip because obviously the officers are claiming that they knew who the person was. And the government argues that puts this case more in the Elmore kind of box where in the sliding scale of reliability and corroboration, when you have a person who is known to the officers who don't take the extra step to verify that that person is who they say they are. At least that information was sort of passed along to the defense who could then conduct their own investigation and verify the existence of this claimed person. Here, that didn't happen. Nobody, the court, the district court, us, I don't know about the government, but has even taken a step to verify whether this person actually exists in the first place or whether they gave the information that was reported in the Amtrak records. But there's not an appeal here of the decision. So the trial court, and there are two motions to suppress rulings, right? In the first ruling, I think the trial court finds that the informant's privilege protects, that that's going to apply and he or she, the district judge, is not going to disclose the identity. Is that aspect of the ruling appealed here? No. The government did not agree to include that in the conditional plea agreement, so it is not raised here. That is not to concede that the district court got it right. Right, of course. But I think the strong argument is that it didn't, or at least was inconclusive in its analysis. But if we're stuck with it because of the nature of a conditional plea and the narrowing of the issues, if we assume that that's right, and we, are we then sort of stuck with the district court's assessment of that? And we are deferential even if we were to look at the information ourselves, right? I guess it's hard for me to see what we do with that because we sort of have to, it feels like we have to accept that conclusion. What can we do other than accept the conclusion that there was enough for reasonable suspicion under these circumstances? Well, as I sort of let off, I think while we're not challenging the denial of the motion to disclose, and therefore we're not asking the court to review whether it was properly suppressed or redacted or not disclosed, there is the sort of foundational question about reliability that underlies all of this. So we can independently review it because we have access to it and say. Correct. Your answer, unfortunately, would also still be sort of in a black box, but it would say we've reviewed it and we agree that it was sufficient or we don't agree it's sufficient. Well, I'm asking you to look at the government's version, the fully unredacted version, for indicia of reliability within the four corners of that document. But I think also the court can look at the record as a whole and say, was there other indicia of reliability that would ensure against fabrication? But that's sort of the first bottom line question. Isn't there a case law saying that as distinct from an anonymous tip, if someone calls up and says, I'm James Egan, and I've observed the following things happening, and you should look into that, that that is different, substantially different than an anonymous tip? Because the fact that someone is willing to identify themselves gives a, you know, that makes it at least, they're taking the risk, even if the government doesn't go out and, you know, hunt them down and verify that it was really you who made the call. That adds a dimension of credibility that is not present with an anonymous tip. Certainly, but in that example, I think what you're, you know, sort of supposing is that that information is conveyed to defense counsel, who then has that information, can conduct their own investigation and determine that that person actually exists, one, and two, provided the information that's claimed to have been provided. That's a lot of the cases that you're talking about where you don't have anonymity. You have anonymity. Obviously, nobody knows who it is, but you have the officer coming into court at a hearing, which there wasn't even a hearing here, testifying, offering sworn testimony, and therefore vouching that the claim is as he said. We're talking about a reasonable suspicion, right? Correct. We're not talking about a probable cause to make an arrest. No. Still less proof beyond a reasonable doubt. The only question is, I mean, unless you're challenging the possibility that the officers made all this up and that there never was such a person. But if we were to accept that, which I think is a premise of the ruling by the district court about the informant's privilege, that there really was an informant who deserves protection. But passing that, unless the officers made it all up, it's a little difficult for me to see how if a civilian witness who gives their name says, here's what this person is doing, and even the innocent part of it is corroborated. He really is traveling back and forth to New York, more or less as predicted. You're saying that a reasonable officer should not have the authority to just go up and say to the person, excuse me, I'd like to ask you a few questions, and please don't run away because you're stopped, and we're going to ask you a few questions. That can't be done under those circumstances, would be your position. I mean, I think what I'm getting at is sort of like the assumption in that question, which is that there is no fabrication, right? No fabrication by the officer. Correct. So the officer can't rely on their own conjured claims, right? That wouldn't be reasonable. They have to rely on something that is supported outside.  You're saying there's no affidavit or anything supporting any of this. No. As far as I can tell, the Amtrak records are not signed under perjury. Nothing was submitted by the government. No affidavit was submitted by the government. I thought that the district court was going to have a hearing on reasonable suspicion. It took the records from the government and reviewed them in camera to determine whether to disclose them, and then just decided that there was reasonable suspicion short of a hearing, and then we moved to consent. I see. Yeah. Okay. So this is Tucker. This is really spelled out in a Second Circuit decision. Tucker 1967 case. I think I'm saying it right. Friendly, too, is another example of this. I know I'm running out of time. You've reserved a couple minutes. If you don't want to hit us with a closing thought, that's fine, but we will hear back from you in a couple minutes. I'll wait. Thank you. Mr. Dosanjh. May it please the court, Rajiv Dosanjh for the United States. I think I would like to address the question from Judge Miriam. I think we're kind of moving over into a kind of procedural claim when defendant is raising the idea that, well, there wasn't an affidavit. There wasn't enough procedure here to verify these tips. I think that question has been waived. What we got in the district court was a ruling based on an in-camera review of the information. The process by which that review occurred was not challenged. It's not challenged here. In fact, the defendant is asking this court to do the same thing, to look at these records and see whether they establish reasonable suspicion. Just to be clear, I was a little taken by surprise by the argument that the district court could not rely on the police reports because that was not submitted as sworn testimony, because I hadn't seen that in the brief. And you're saying that is the point that is waived. In other words, that the brief makes the argument there was no reasonable suspicion based on the facts that the district court found, not the argument that the fact-finding is flawed because there was no admissible evidence or no sworn testimony. Correct, Your Honor. I think those are procedural questions that are not before the court. I think what the question that's before the court is looking at these records in camera. And I understand that the defendant is at a disadvantage here, but the defendant has asked this court to perform the same review that the district court did. And I think that would be a de novo review with factual findings being subject to clear error. But I think the ultimate question about reasonable suspicion would be de novo. But looking at those records, the unredacted records, does that establish reasonable suspicion? And I think I'm somewhat constrained in what I can say here, but I would refer the court to pages 7 and 12, in particular of the unredacted reports to establish that there was predictive information here, that there was accurate information given. Also, there was corroboration by police investigation of certain details of the reports, which again lends credence to the claim of criminality. So if you can corroborate some of the facts, that makes it more reasonable to rely on the claim that, yes, he was transporting drugs on July 5th. Can I shift to the question we didn't talk about before, which is this, let's assume for a minute that we're past the initial stop. Watching the video, he's sort of corralled into a, it's not an enclosed space in the sense of walls, but it's bounded by chairs. There are officers there very close to him. Clearly a lot of them planted all around as well. I take it your position is, notwithstanding that show of force, but I think everybody contested that there was a confronting him with accusations of criminal wrongdoing, that Mr. Franklin both was free and would reasonably have felt free to say, you know, I'm going to move on and get up and walk away. So I think, Your Honor, I think this gets to the idea that there was a Terry stop here. And I think looking at the facts that, you know, if there was a show of force, the judge did find that there was a Terry stop. So I think once you're in a Terry stop situation, you can't just walk away from a police officer. He's not free to leave. That's the whole point of the fact that the Terry stop is a seizure. He is seized. Now, that has to be a brief seizure. It can't rise to the level of an arrest. And there are a series of cases that talk about what the boundary line is. But he doesn't have to be. He is not free to leave, I take it, given that it's a Terry stop. Right, right. I mean, the government concedes that for purposes of the appeal or not? Well, I'm bound by I think we made that concession in the district court. That's what I thought. It's, you know, it occurred to me in reading the record that it may well be that the officers set this up in such a way that it might have been argued or that they might have wished it to be argued that it was a consensual encounter. But the government did not and does not make that argument here. Well, I think, Your Honor, you're free to affirm on any basis that it has support in the record of the problem. Well, no, I'm not suggesting that there wasn't a show of force and that it wasn't a Terry stop. Right. Only that I don't have to make that decision because that's conceded. The question is just since it is a Terry stop, the issue is, I take it, was there reasonable suspicion? Correct. I suppose the question of consent raises a question of was there intimidation involved? And there's also an argument made by the defendant that this constellation of facts constitutes an arrest and not a Terry stop. Right. Okay. And I'd like to go back to where I was heading with my question. The officer testified that had Mr. Franklin said he wanted to leave after the initial stop and they were sitting there, that he could have. There was emphasis on the positioning of the second officer and whether he brought the egress and other things. And so I guess I am curious. I understand that a Terry stop is a stop. One has to stop. But one of the questions in this case is whether by duration or show of force it ripened into a de facto arrest. And so I guess I'd like to just hear you talk about that a little bit. So as a district court found, I think that this was a Terry stop that did not ripen into an arrest. I think there are certain factors that this court looks at. When you say that it's a district court found, is the question of whether it ripened into a de facto arrest a factual question to which we owe deference to the district court? Or is that a legal determination or a mixed question of fact in law that would make a determination? I think it's a latter. I think the ultimate question, did this turn into an arrest? I suspect that that's a legal question. But the underlying facts found as to what the video showed I think would be for clear error. Those would be reviewed for clear error. And I think the video shows that, again, the length of time here between him sitting down and consenting to the search, which is, again, another factual finding by the district court, was less than two minutes. It was much less time than the 30 minutes in the case. The Tarani case cited in our brief, it's 49 F3rd 54, which said about 30 minutes in a closed room didn't ripen into an arrest. This was a public space. There's people walking feet away. There was no one screening him off from view. The officer that had her back turned towards the seating area, she left for about 30 seconds at one point. There was an officer who was standing by an exit door, but that is not the main way you get out and into the station. There was no restraints used. They were all in plainclothes. There's no guns drawn, no physical force used on him. They didn't take his driver's license to prevent him from leaving, as in the analogous to the Royer case. He wasn't in the closed room, which was kind of a maintenance closet that had been converted to that. And I do think it is, even though we were under a Terry stop, that there was an opening to leave. And people, no one, as he admitted, was blocking his ability to still get up and walk away. Why is that piece relevant even to the arrest question? Because, after all, at least for some period of time, they were entitled to stop him. So if they did block, but I guess your point is, yeah, and even so, they didn't do that in that there was no at least physical constraint on his leaving. Right. I think it's a factor. Okay. I see what you're saying. I'm interested in this question of the different views of what he said and didn't say about wanting to search and consent. It seems to me that even the government's version of events is that he is unprompted sort of saying, You want to search my stuff? You want to search my stuff? Have at it. Search my stuff. Which suggests either he's responding to either a statement, which is his statement, not the government's statement or position, or that he's responding to stimulus of another kind, to a feeling that he is stuck and has no choice. And, in fact, the district court sort of says his apparent belief that he had no choice. In light of that, that's the government's version, is that he sort of was under this impression like, You want to search my stuff? You want to search my stuff? It surprises me that he wasn't told that he didn't have to consent. Well, getting to that, what I think he was responding to was they did say to him, Do you have something that you're not supposed to have? And I think that is somewhat a natural response to that question. If you want to search my stuff, go ahead. But, again, I think the question is whether that consent was involuntary under the circumstances. And I think for all the various factors that we have here, yes, there was five police officers in his immediate vicinity. But for the other reasons, I think that it would be very difficult to overturn the finding of the district court. I understand what I'm saying. In light of the officer's own contention, is that he was, instead of saying, No, I don't have anything I shouldn't have, or I don't want to answer that question, he immediately assumes a search is forthcoming. And I think it's conceded that he was not given a paper consent to search, and he wasn't informed of his right to refuse the search.  And ever since Shnepeloff against Bustamante, the Supreme Court has made the slightly irrational distinction between what you have to do when you are seeking to interrogate someone, Miranda warnings, and what you don't have to do when you're seeking consent to search, which is to give what, had the case gone the other way, would now be called a Bustamante warning, that you have a right to say no to us, but we'd like you to consent to search. And, of course, here, if I say to somebody, Do you have anything illegal on you? And he says, Go ahead, look, you'll see. I'm not sure if he didn't have anything. That would certainly be a perfectly rational response. That would be free. It's a little odder. OK, go ahead and you'll you'll find for yourself. Right. I guess I mean, there's two ways to look at that. I think it's either it's it's a kind of concession. This is going some way. I can't stop it. Or it's it's a hope, perhaps, that if he's so cooperative that they will maybe just say. They won't bother. Yeah. Yeah. Either way, if there's two ways to look at it, the district court judge chose to look at it. Right. I think the standard review when it comes to voluntariness and consent is very favorable to the prevailing party. So it's it's we have to draw inferences in favor of the government in that question. And again, this is the voluntariness and consent are factual questions that would otherwise otherwise be reviewed for clear. Unless there's other questions. Thank you. Mr. With respect to the first question, reasonable suspicion. The fact remains that reliability is still a sort of first line level analysis for any reasonable suspicion review. Admittedly, it wasn't raised court here. The defense did raise the issue in the district court. It's a bit of an unusual procedure and that I would have liked to have briefed that more fulsomely or even at all. So. But I don't think that prevents this court from reviewing it anyway. With respect to the consent. The officer's claims don't really make any sense. They say it's a polite, cordial encounter. It's going to know for a second. It doesn't look like the clock has started going. Replay. And then Franklin is said to have just blurted out. You want to search my stuff? It doesn't sort of it doesn't jive with what is claimed to have been just this sort of free passing kind of polite exchange. But nevertheless, if he gives consent to search his belongings, why would the officers wait a minute then to do a search and then an additional minute to do a manual search? If their suspicion is that he has drugs in a backpack and he gives consent, then it would make sense for them to search his backpack right away. And so what ends up making more sense is what the officer Ash says in his testimony, which is that some of this is implied that Franklin is merely submitting to the statement. We're going to search your stuff is and he doesn't respond. Well, we're now going to do the canine search. We're now going to search your bag. No response. How do we as a reviewing court manage that argument? I mean, I understand what you're saying. There are lots of reasons why what was essentially a credibility determination by the district court might seem odd on paper. We might have a different view looking at a cold record, don't we? Don't we owe considerable deference to the district court's determination of whose testimony to credit on the question of consent? There certainly is case law to that effect, Your Honor. But I would I would argue that that deference should be reduced when police take no measures to document what they're doing. He has a phone. He could have recorded it. He admitted that testimony. He has the form. He's been educated, trained on how to use it. Eleven officers are there. Not a single one presents the form. They're there to conduct a drug interdiction. That's the whole point. And the whole point is to search his bag. They don't get a warrant in advance. They could have if they thought they had probable cause. They need a warrant to search. But they didn't have probable cause. You argue they didn't even have reasonable suspicion. Of course. But that but that which means that the only way to get into his bag is through consent. I mean, there's no exigency. So it's consent. And eleven officers and not one brings a form. Not a one documents his consent in any meaningful way. Contemporaneous. It doesn't make sense. And then the recording, which they're not a visual recording, which I don't know if they're aware of. I'm not sure I understand what you mean by it doesn't make sense. It's stupid if they didn't bring a form or maybe it's tactical that they thought, well, if we show him a form, maybe he'll change his mind. He's already said it's OK. We can just go ahead. Whatever. But what difference does that make? I'm sorry. Eleven officers and none of them brought a form. But it's still a question of did he consent or did he not consent? Was it voluntary or was it involuntary? The district court addressed that question. It was fully briefed. Testimony was taken. A judgment was made. A fact finding was made. And what is the argument that it is clearly erroneous that a reasonable, no reasonable fact finder could find that? Because the video contradicts the claim that he gave consent to search his bag and they waited a full two minutes before actually doing so. So the fact that they decided to be take an extra step to verify that there might be drugs in the bag by bringing the dog, maybe because they thought, OK, if that happens, then that'll give us probable cause or something. Why do you hold it? Why should we hold against them that they brought a dog to sniff the bag and the dog alerted? It's a big deal. So they already had reasonable suspicion. Now they have a more reasonable suspicion. They have their consent. Then they look in the bag two minutes after he allegedly consented. Because they already had his consent. Why wait? And if the dog still didn't have his consent, then why wait either? Because if your proposition is they're going to do it anyway, what is bringing the dog have to do with the question? Right. Because there is there is case law that suggests that upon reasonable suspicion, officers can conduct a search. Yeah. Right. So and so they did. But they did after they pinned him into a corner and recess bench and got his alleged consent. That was done in a way to to legitimize what would necessarily have to become come after the canine sniff if it alerted to anything, which is this is consent to search the bag. So why? Why wait at all if you've already got? Why? Why jeopardize the search if you've already got it? I understand. Okay. Thank you. I think. Thank you. Appreciate it. Both of you. We will take this case under advisement.